IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENT L. ALFORD,

    Plaintiff,

    v.                          CASE NO. 24-3022-JWL

GORDON HARROD, et al.,

    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently detained at the Ellsworth Correctional Facility in Ellsworth, Kansas. He has paid the full filing fee. The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials.

**I. Nature of the Matter before the Court**

Plaintiff alleges in his Complaint (Doc. 3) that the defendants provided him with inadequate medical care over a period of four years (2017-2021) while he was incarcerated at the El Dorado Correctional Facility ("EDCF"), Lansing Correctional Facility ("LCF"), and Larned Correctional Facility ("Larned"). He states that he suffered chronic, debilitating abdominal pain throughout that period, and the pain was "never addressed or diagnosed." (Doc. 3, at 2.) Plaintiff asserts that Dr. Harrod "persisted in a course of treatment known to be ineffective" and refused to refer Plaintiff to an outside specialist or order further investigation, despite Plaintiff's unresolved pain, blood loss, weight loss, anemia, and other symptoms. *Id*. at 2-3.

Plaintiff further states that Dr. Wray "could have abated Plaintiff's risk of suffering a ruptured appendix at [Larned] in January of 2021, by examination at the onset of symptoms." *Id*.

1

at 3. Plaintiff alleges that Wray ordered an abdominal x-ray on January 7, 2021. *Id.* at 6. The x-ray was performed on January 11 but was "not the type ordered." *Id.* Plaintiff was experiencing intense, unbearable pain by January 12, 2021. On January 25, 2021, Wray diagnosed him with irritable bowel syndrome with constipation but did not physically check Plaintiff's abdomen. *Id.* Plaintiff continued to experience intense pain and was unable to keep anything down. By February 2, 2021, Plaintiff states that his abdomen was swollen, the pain was unbearable, he was dizzy and incontinent, and he continued to be unable to eat or even keep medicine down. *Id.* On February 3, he was taken for an emergency CT scan, which showed that his abdominal cavity was filled with infection from a ruptured appendix and other indeterminate issues. *Id.* Plaintiff was then taken to the hospital for emergency surgery. Surgery could not be performed because of the acute infection. *Id.* Plaintiff was treated with antibiotics for five days. A repeat CT scan showed a tumor on Plaintiff's colon. *Id.* Plaintiff had surgery on February 8, 2021. A portion of his colon and small intestine was removed, along with the ruptured appendix. *Id.* After the surgery, Plaintiff experienced difficulty breathing and violent vomiting, which caused the surgical incision to reopen. *Id.* He had a second surgery on February 10, 2021, to reclose the incision. *Id.* Plaintiff alleges that Wray's delay in diagnosing and treating Plaintiff led to substantial harm through a ruptured appendix, severe pain, and acute infection. *Id.* at 3.

The Complaint brings one count titled "Deliberate Indifference." *Id.* at 4. Plaintiff names as defendants Dr. Gordon Harrod, doctor for Centurion; Dr. Robert Wray, doctor for Centurion; and Centurion. Plaintiff's request for relief seeks a declaration that his constitutional rights were violated and "nominal, compensatory and punitive damages." *Id.* at 8.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court,

a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. DISCUSSION

#### A. Statute of Limitations

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs

4

civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

However, the Kansas Supreme Court tolled the state statutes of limitations for approximately a year in response to the COVID-19 pandemic. *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021). The tolling or suspension is set forth in Kansas Supreme Court ("KSC") Administrative Order 2020-PR-016, as amended by KSC Administrative Order 2020-PR-32.

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It appears that Plaintiff's claims accrued no later than March of 2021. If Plaintiff's claims accrued in March, 2021, he received the benefit of the KSC's suspension of the statute of limitations until April 15, 2021. On that date, the clock began to run, and the two-year limitation period expired April 15, 2023. Plaintiff filed his Complaint on February 8, 2024. It thus appears

that any complained of events or acts took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed). Even considering the KSC's suspension of the limitations period, Plaintiff's claims are untimely, without additional tolling.

However, Plaintiff includes the following statement in his Complaint: "Relief was sought by filing grievance on 12-13-21. All response to grievance were late. Appeal finally decided on 11-21-23." (Doc. 3, at 8.) Plaintiff also filed a copy of the December 13, 2021, grievance. (Doc. 1-3.) Plaintiff describes the nature of his complaint as follows:

> This grievance comes about because of the Deliberate indifference of Dr. Harrod, et. al, Corizon and Centurion to my serious Medical needs. I suffered chronic and severe abdominal pain for over (4) years, This condition was never diagnosed and no treatment was ever provided.

*Id*. at 1.

Plaintiff also attached two (2) additional typed pages describing the course of his abdominal complaints, starting in 2017 and continuing through the ruptured appendix, surgeries, and diagnosis of colon cancer in 2021. *Id*. at 2-3.

The Unit Team response to the grievance is dated August 30, 2023. It says that he needed to pursue his grievance in 2022. *Id*. at 1. Plaintiff appealed to the warden immediately. *Id*. The warden's response is dated September 12, 2023, and the response was provided to Plaintiff on September 19, 2023. *Id.* Plaintiff then submitted his appeal to the Secretary of Corrections on September 20, 2023. *Id.* at 4. The Secretary's response (titled "Unofficial-Grievance Response") is dated November 21, 2023. *Id*. at 6-7.

The Tenth Circuit has found that it would be inequitable for the statute of limitations to run while a plaintiff is completing the exhaustion of administrative remedies required by the PLRA prior to filing suit. *Johnson v. Garrison*, 805 F. App'x 589, 594 (10th Cir. 2020) (unpublished); *see also Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019) ("[E]very circuit that has confronted a state no-tolling rule and reached this question has applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period."). Therefore, it appears from the face of the Complaint and exhibits that the statute of limitations for Plaintiff's claims was tolled until November 21, 2023, making his Complaint timely.

### B. Centurion as Defendant

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008)

7

(stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

Plaintiff has failed to state a claim against Centurion regarding his medical care. Plaintiff has failed to allege a formal statement by the company or a persistent, well-settled practice of unconstitutional misconduct by employees. Plaintiff's claims against Centurion are subject to dismissal.

### C. Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting

*Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983). However, a jury may infer conscious disregard when a prison doctor "responds to an obvious risk with treatment that is patently unreasonable." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"

*Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Lucas*, 58 F.4th at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id.* "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

The Court finds that the proper processing of Plaintiff's Complaint cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen the Complaint under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) The KDOC shall submit the *Martinez* Report by **September 2, 2024**. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order serving the defendants.

(2) KDOC officials responsible for the operation of the EDCF, LCF, and Larned Correctional Facility are directed to undertake a review of the subject matter of the remaining claims in the Complaint:

    a.    To ascertain the facts and circumstances;

    b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated July 2, 2024, in Kansas City, Kansas.**

> **S/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**