IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENT L. ALFORD,

    Plaintiff,

v.                    Case No.  24-3022-JWB

GORDON HARROD, et al.,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion to dismiss. (Doc. 27.) The motion has been fully briefed and is ripe for decision. (Docs. 28, 29, 31, 32.) The motion is DENIED for the reasons stated herein.

**I.  Facts**

The facts set forth are taken from Plaintiff's complaint.[1] (Doc. 3.) Plaintiff, a prisoner at the Ellsworth Correctional Facility, brings this pro se civil rights action under 42 U.S.C. § 1983. During the years 2017-2021, Plaintiff has been incarcerated at the El Dorado Correctional Facility ("EDCF"), Lansing Correctional Facility ("LCF"), and Larned Correctional Facility ("Larned"). Over the course of those years, Plaintiff received medical treatment from Defendants Dr. Harrod and Dr. Wray. Plaintiff alleges that he has suffered chronic, debilitating abdominal pain, and that the pain was "never addressed or diagnosed" by Defendants. (Doc. 3 at 2.) Plaintiff alleges that Dr. Harrod "persisted in a course of treatment known to be ineffective" and refused to refer

---

[1] Plaintiff filed an initial complaint with attachments on February 8, 2024. (Doc. 1.) Plaintiff's initial complaint, however, was not filed on the court's approved form. (Doc. 2.) Plaintiff was notified of the deficiency and resubmitted his complaint on the approved form. (Doc. 3.) The facts set forth herein are taken from the complaint on the court's approved form. The court also references statements from the exhibits to the original complaint as well.

1

Plaintiff to an outside specialist or order further investigation, despite Plaintiff's unresolved pain, blood loss, weight loss, anemia, and other symptoms. (*Id.* at 2–3.)

Plaintiff's complaint sets forth his history of treatment and pain complaints. Plaintiff alleges that he repeatedly made sick calls about his consistent abdominal pain for years. According to Plaintiff, Dr. Harrod did not take any additional action after a CT report in September 2018 despite Plaintiff's continued pain and symptoms. From October 2018 to September 2020, Plaintiff complained of loss of appetite, nausea, loss of blood, weight loss, anemia, fatigue, constipation, and diarrhea. (*Id.* at 3.) Plaintiff's memorandum of law filed in his original complaint asserts that "Defendant Harrod's refusal to refer to specialist where doctor did not know cause of reported extreme pain made no sense and supports deliberate indifference finding." (Doc. 1-4, at 2.) He further contended that Dr. Harrod knew that severe abdominal pain may be the sign of a potentially life-threatening condition but he failed to take action.

Plaintiff suffered a ruptured appendix at some point in January 2021. Plaintiff alleges that Dr. Wray could have prevented this by examination at the beginning of Plaintiff's symptoms but that he never explored whether Plaintiff was suffering appendicitis. (Doc. 3 at 3.) Plaintiff alleges that Wray ordered an abdominal x-ray on January 7, but that the x-ray performed was not the type that was ordered. (*Id.* at 6.) On January 12, Plaintiff was experiencing intense, unbearable pain. On January 25, Wray diagnosed him with irritable bowel syndrome with constipation but did not physically check Plaintiff's abdomen. *Id.* Plaintiff continued to experience intense pain and was unable to keep anything down. By February 2, Plaintiff states that his abdomen was swollen, the pain was unbearable, he was dizzy and incontinent, and he continued to be unable to eat or even keep medicine down. On February 3, he was taken for an emergency CT scan, which showed that his abdominal cavity was filled with infection from a ruptured appendix and other indeterminate

2

issues. *Id.* Plaintiff was then taken to the hospital for emergency surgery. Surgery could not be performed because of the acute infection. *Id.* A repeat CT scan showed a tumor on Plaintiff's colon. Surgery was performed on February 8 during which the surgeon removed his ruptured appendix and a portion of his colon and small intestine. Plaintiff's incision later ruptured resulting in a second surgery to reclose the incision. Plaintiff alleges that Dr. Wray's delay in diagnosing and treating Plaintiff led to substantial harm through a ruptured appendix, severe pain, and acute infection. (*Id.* at 3.)

Plaintiff's complaint brings one count of deliberate indifference to medical needs in violation of the Eighth Amendment against Dr. Harrod and Dr. Wray. Plaintiff also initially brought a claim against Centurion, Defendant's employer; however, Centurion was dismissed upon screening of the complaint. (Doc. 17.) Plaintiff alleges that he administratively exhausted his claim by filing a grievance with the prison on December 13, 2021. (Doc. 3 at 8.) However, this process was not completed until November 21, 2023, when the appeal was finally decided, since Plaintiff alleges that the responses to his grievance were late. Plaintiff's initial complaint in this matter was filed on February 8, 2024. Plaintiff's grievance was attached to his original complaint. (Doc. 1-3.) In that grievance, Plaintiff makes the same allegations regarding his medical care that are contained in his complaint. He states that he attempted to file an informal grievance on or about February 1, 2021, at Larned and turned it into the unit team, but he was then rushed off for emergency surgery. Plaintiff then filed a grievance on December 13, 2021. That grievance was not responded to until August 30, 2023, and it was denied as untimely. On November 21, 2023, the Secretary of Corrections issued a final decision in which Plaintiff's treatment was detailed and there was a finding that the physicians provided adequate care to Plaintiff. (*Id.* at 6–7.) Further, that letter indicates that Plaintiff's initial grievance may have been

3

lost between his transfer and that, although his December 2021 grievance was denied as untimely, there is evidence that he may have timely filed a grievance. (*Id.* at 6.)

Defendants now move to dismiss the complaint on the basis that it is barred by the statute of limitations, Plaintiff failed to administratively exhaust his claims, and he fails to state a claim.

## II.     Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Given Plaintiff's pro se status, the court construes his pleadings liberally, but it cannot act as his advocate or construct arguments on his behalf. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

## III.    Analysis

### A. Exhaustion

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

4

"Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). The Tenth Circuit has also held that the PLRA requires that "a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action." *Price v. Shinn*, 178 F. App'x 803, 805 (10th Cir. 2006); *see also Porter*, 534 U.S. at 523–25; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

As discussed in a prior order, there are two sets of regulations for grievances. (Doc. 17.) The first is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations.

Under Article 15, Kansas state prisoners are to utilize the grievance process contained in that section for grievances related to policies and conditions within the facility, and actions by employees of the facility or other prisoners. K.A.R. § 44-15-101a(d). An inmate is required to use this process to exhaust a civil rights claim. *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017); *Lynn v. Kelly*, 2022 WL 1043752, at *1 (10th Cir. 2022) (unpublished). The other process is in Article 16 and is required for personal injury claims.

Under Article 15, the administrative remedies require the inmate to first seek an informal resolution with prison personnel who work with the prisoner on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member,

(2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in K.A.R. § 44–15–102. Further, the regulations provide that an inmate must file the grievance "within 15 days from the date of the discovery of the event giving rise to the grievance" and that no grievance can be filed later than one year after the event. K.A.R. § 44-15-101b. Article 16 has a shorter time limit (10 days). K.A.R. § 44–16–104a. This court has held that an inmate need not file a grievance pursuant to Article 16 to preserve a § 1983 claim based on a violation of constitutional rights. *Conley*, 2015 WL 413638, at *14.

Defendants argue that Plaintiff's claim should be dismissed for failure to timely exhaust his administrative remedies as the grievance was filed in December 2021, which is more than 15 days after the events surrounding his medical treatment. Based on the allegations, the last event occurred on February 10, 2021. In response, Plaintiff argues that the regulation allows him up to one year to file a grievance and that he timely exhausted his claim. Plaintiff also filed what is essentially a sur-reply in which he asserts that he did not have knowledge of his claim within 15 days of the incident and that he later learned of the availability of his claim. (Doc. 32.)

At this stage of the proceeding, the court is to liberally construe the complaint. Plaintiff has alleged that he exhausted his administrative remedies and he attached a grievance which was filed within one year of the last medical treatment Plaintiff received. Further, the response to the grievance by the Secretary of Corrections suggests that the Secretary believed that there is evidence that Plaintiff filed a timely grievance. (Doc. 1-3 at 6.) Moreover, the Secretary investigated and responded to Plaintiff's grievance on the merits. The Tenth Circuit has held that if "a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Ross*

*v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *see also Cannon v. Mason*, 340 F. App'x 495, 497–98 (10th Cir. 2009); *Marshall v. Wiebe*, No. 16-3014-EFM-KGS, 2018 WL 1806760, at *4 (D. Kan. Apr. 17, 2018). Based on the Secretary's response to Plaintiff's grievance, the court could find that Plaintiff's grievance has been exhausted. The parties are free to address exhaustion again on summary judgment, however. At this stage, Defendants' motion to dismiss on the basis that Plaintiff failed to exhaust his administrative remedies is denied.

### B.  Statute of Limitations

Defendants also assert that Plaintiff's claim is barred by the statute of limitations. As noted by Judge Lungstrum in a prior order, the statute of limitations is tolled while a prisoner is exhausting his administrative remedies. (Doc. 17 at 8) (citing *Johnson v. Garrison*, 805 F. App'x 589, 594 (10th Cir. 2020); *Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019) ("[E]very circuit that has confronted a state no-tolling rule and reached this question has applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period."). Therefore, Plaintiff's claim was tolled until the denial dated November 21, 2023. This would make his claim timely at this stage of the proceedings. *See* Doc. 17 at 8.

### C.  Failure to State a Claim

Plaintiff contends that Defendants were deliberately indifferent to his medical needs. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). At this time, the alleged facts show that Plaintiff did have a serious illness related to his appendicitis and other gastrointestinal issues.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1304-05 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). The test requires that Defendants "possess an actual consciousness of a risk to prisoner health and safety." *Toevs v. Milyard,* 563 F. App'x 640, 645 (10th Cir. 2014).

Defendants move for dismissal on the basis that Plaintiff's complaint only amounts to a difference in opinion as to treatment methods which does not support a deliberate indifference claim. Reviewing the allegations, with respect to Dr. Harrod, Plaintiff has alleged that he made numerous complaints of increasing pain and other physical symptoms that were ignored and Plaintiff was not referred for further testing or specialist care. With respect to Dr. Wray, Plaintiff made similar complaints and Dr. Wray allegedly failed to physically examine Plaintiff even though

his symptoms were indicative of potential appendicitis. Plaintiff's appendix did rupture and resulted in a significant infection, surgery, and pain. Plaintiff also had a tumor on his colon. Plaintiff alleged that both providers had knowledge of his symptoms but failed to take appropriate action in response resulting in increased pain and injury. At this stage of the proceedings, the court finds that Plaintiff's allegations are sufficient to support a finding that Defendants knew of and disregarded an excessive risk to Plaintiff's health.

**IV. Conclusion**

Defendants' motion to dismiss (Doc. 27) is DENIED.

IT IS SO ORDERED. Dated this 2nd day of June, 2025.

                                                    __s/ John W. Broomes_____  
                                                    JOHN W. BROOMES  
                                                    UNITED STATES DISTRICT JUDGE