IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENT L. ALFORD,

        Plaintiff,

v.                                   Case No. 24-3022-JWB

GORDON HARROD, *et al*.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion for summary judgment. (Doc. 65.) The motion is fully briefed and ripe for decision. (Docs. 66, 75, 76, 80, 81, 82.)[1] The motion is GRANTED because Plaintiff fails to establish a question of fact under the deliberate indifference standard for the reasons stated herein.

**I.    Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "A fact is material if, under the governing law, it could have an effect on the outcome

---

[1] After Defendants' reply (Doc. 81) was filed, Plaintiff filed a document entitled "Plaintiffs Reply to Defendants Response to Plaintiffs Statement of Additional Facts." (Doc. 82.) This document is a textbook example of a sur-reply and was filed without first requesting leave of court or explaining the "rare circumstances" justifying an additional filing. *Humphries v. Williams Nat. Gas Co*., No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998). D. Kan. Rule 7.1(c) limits briefing on motions to: a motion (with supporting memorandum), a response, and a reply. Therefore, the court will not consider it. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That said, Plaintiff's sur-reply merely sets forth arguments already stated in Plaintiff's response; thus, even if considered, it would not impact the court's decision herein.

of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall*, 935 F.2d at 1110. The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies.  D. Kan. R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id*.  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc*., 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in [the movants] summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

The court is mindful that Plaintiff proceeds pro se.  As a pro se litigant, Plaintiff's pleadings are to be construed liberally. *See Hall*, 935 F.2d at 1110.  However, this does not alleviate Plaintiff's burden of coming forward with evidence to support his claims as required by Federal Rule of Civil Procedure 56 and Local Rule 56.1. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Further, the court may not assume the role of advocate for the pro se litigant. *See Van Deelen v. City of Eudora, Kan.*, 53 F. Supp. 2d 1223,

1227 (D. Kan. 1999); *Sallaj v. Feiner*, No. 23-CV-01172-EFM-BGS, 2024 WL 112303, at *2 (D. Kan. Jan. 10, 2024) (citing *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) ("Plaintiffs are not excused from following procedural rules—including local rules—simply because they choose to proceed pro se.").

## II.    Facts

The facts set forth herein are material to the issues on summary judgment and uncontroverted or, if controverted, viewed in a light most favorable to Plaintiff.

Plaintiff was served with the motion for summary judgment and a corresponding notice to a pro se litigant who opposes a motion for summary judgment.  (Doc. 69.)  That notice tells Plaintiff how to comply with both Federal Rule of Civil Procedure 56 and local rule D. Kan. R. 56.1 when responding to a motion for summary judgment.  (*Id.*)  Even though Plaintiff received the notice, Plaintiff did not comply with D. Kan. R. 56.1(b)(1).  He did not controvert any of Defendants' facts in its summary judgment briefing.  (Doc. 66.)[2]  Instead, Plaintiff asserted his own alleged material facts.  (Doc. 75 at 1–2.)  Defendants' facts, therefore, are deemed uncontroverted and admitted.  Accordingly, a short summary of the facts is all that is necessary.

Plaintiff, a prisoner at the Ellsworth Correctional Facility, brings this pro se civil rights action under 42 U.S.C. § 1983.  (Doc. 3.)  Plaintiff has been incarcerated with the Kansas Department of Corrections since September 23, 1993, and his earliest possible release date is August 5, 2050.  (Doc. 66 ¶ 1.)  From 2017-2021, Plaintiff has been incarcerated at the El Dorado

---

[2] The court notes that while Plaintiff did not controvert any fact in his response to Defendant's motion for summary judgement (Doc. 76), he did file an affidavit accompanying his response entitled "Plaintiff's Statement of Disputed Factual Issues," that appears to be Plaintiff's attempt to controvert facts.  (Doc. 75.)  The affidavit fails to controvert any facts in Defendants' motion for summary judgment.  Specifically, Plaintiff merely disputes Defendants' three primary arguments in their brief supporting summary judgment—*i.e.*, "Plaintiff has exhausted administrative remedies . . . Plaintiff filed complaint within the applicable statute of limitations . . . [and] defendants were deliberat[ly] indifferent[]."  (*Id.* at 1.)  These broad statements do not controvert Defendants' facts; but instead, controvert Defendants' arguments—the merit of which is for this court to decide.

Correctional Facility ("EDCF"), Lansing Correctional Facility ("LCF"), and Larned Correctional Facility ("LCMHF"). (*Id*.) During that time, Plaintiff received medical treatment from Dr. Harrod and Dr. Wray (collectively "Defendants"). (Doc. 3 at 2.) Plaintiff alleges that while under the care of Defendants, he suffered chronic, debilitating abdominal pain, and that the pain was "never addressed or diagnosed" by Defendants. (*Id*.) Therefore, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights under the Eighth Amendment. (*Id*.)

Plaintiff's medical issues began in December 2017 when he complained of stomach cramping and fatigue. (Doc. 66 ¶ 3.) During this time, Plaintiff was housed at EDCF and was under the care of Dr. Harrod. Dr. Harrod conducted a physical exam of Plaintiff and diagnosed him as suffering from an acute onset of anemia and prescribed him medications—such as simethicone and docusate—that are meant to prevent bloating and excessive gas production and reduce pain. (*Id*. ¶¶ 4-5; Doc. 66-5 at 2.) Dr. Harrod then initiated a series of diagnostic tests, treatments, and other interventions over the following three years as Plaintiff had recurring complaints of loss of appetite, nausea, weight loss, anemia, fatigue, constipation, and diarrhea. (Doc. 3 at 3.)

The following details those diagnostic tests, treatments, and other interventions. In December 2017, Dr. Harrod requested that Plaintiff undergo a colonoscopy, which was performed in March 2018 and showed normal results. (Doc. 66 ¶¶ 6-7 (citing Doc. 66-3 at 3).) In April 2018, Dr. Harrod ordered an abdominal ultrasound, which came back negative for cancer or other gastrointestinal issues for which the test was looking. (*Id*. ¶¶ 8-9 (citing Doc. 66-3 at 3).)[3] In May

---

[3] Plaintiff attempts to dispute this fact by stating that he also reported pain and a request to be seen by an outside specialist. (Doc. 76 at 1–3.) Plaintiff repeatedly mentions that he complained of pain. These subjective complaints, if anything, only supplement the record and do not contravene the objective facts in Plaintiff's medical record and the record as a whole.

2018, Plaintiff attended an appointment with Dr. Harrod and stated that his abdominal pain was 8 on a scale of 10 and his pain was increasing. (Doc. 75 at 2.) In response, Dr. Harrod verbally ordered nurses to increase Plaintiff's iron supplements to treat his anemia and reduced energy level, and Plaintiff was prescribed milk of magnesia (MOM) and instructed to take it daily to reduce bloating and otherwise relieve pain associated with Plaintiff's gastrointestinal issues. (Doc. 66 ¶¶ 10-11.) Dr. Harrod also ordered Plaintiff's docusate prescription be increased. (Doc. 66-5 at 2.) Later that month, medical staff requested an esophagogastroduodenoscopy (EGD) be done on Plaintiff for diagnostic purposes involving Plaintiff's anemia diagnosis. (Doc. 66 ¶ 12.)

In June 2018, Plaintiff was transferred to Labette Health where the EGD was performed. (*Id*. ¶ 13.) Providers at Labette Health indicated that a CT scan would also be necessary and, when it was performed later that month, revealed an adrenal mass and inflammation in his large intestine. (*Id*. ¶ 15.) As a result, Dr. Harrod ordered additional imaging and another CT scan while at Labette Health. (*Id*. ¶ 16.) By October 2018, Plaintiff informed Dr. Harrod that the iron supplements were making him feel better. (*Id*. ¶ 18.) At that appointment, Dr. Harrod noted that Plaintiff's prostate biopsy was negative, his colonoscopy was normal, his EGD was normal, and that he continues to be "borderline anemi[c]." (Doc. 80-1 at 1.) That same month, an oncologist reviewed all of Plaintiff's scan results and likewise found nothing cancerous. (Doc. 66 ¶ 19.)

In November 2018, Dr. Harrod ordered that Plaintiff start receiving weekly B-12 injections for four weeks, with the first injection given on November 15, 2018. (*Id*. ¶¶ 20-21.) In January 2019, in response to Plaintiff's continued abdominal pain, anemia, and fatigue, Dr. Harrod requested another EGD/colonoscopy to be done within thirty days. (*Id*. ¶ 22.) Following this procedure, the surgeon suggested that Plaintiff continue taking Carafate, an antacid that had been effective in temporarily treating his symptoms. (*Id*.)

In June 2019, when Plaintiff visited Dr. Harrod about a rash, he expressed that the B-12 shots had made him feel better, though lab work showed he remained anemic. (*Id*. ¶ 24.) Dr. Harrod then requested an additional CT scan of Plaintiff's abdomen to continue monitoring for potential changes. (*Id*. ¶¶ 25-26.) At a September 2019 follow-up visit, Plaintiff stated that he still felt very fatigued. (*Id*. ¶ 27.) In response, Dr. Harrod requested an echocardiogram, referred Plaintiff to the facility's mental health professional, and prescribed additional iron supplements as they had provided Plaintiff some relief from his abdominal pain in the past. (*Id*. ¶ 29.)

Plaintiff did not return to sick call with complaints of abdominal discomfort until May 2020, when he complained of constipation. (*Id*. ¶ 30.) However, at this appointment, Plaintiff expressed to Dr. Harrod that he believed his overall condition was improving. (Doc. 66-3 ¶ 28.) In October 2020, Plaintiff again complained of fatigue, and Dr. Harrod continued his iron supplementation. (Doc. 66 ¶ 31.) In November 2020, Plaintiff followed up and explained that his pain became worse after meals, prompting Dr. Harrod to place him on a renal diet to reduce the post-meal pain. (*Id*. ¶ 32.) During these appointments, Plaintiff describes his pain as "debilitating." (Doc. 75 at 2.)

On December 8, 2020, Plaintiff was transferred from EDCF to LCMHF where he came under the care of Dr. Wray. (Doc. 66 ¶¶ 33-34.) The following month, Dr. Wray ordered multiple tests for Plaintiff, including an abdominal x-ray that showed a moderate level of stool in his colon. (*Id*. ¶ 35.) Five days later, on January 12, 2021, Plaintiff made complaints of extreme pain in his abdomen. (*Id*. ¶ 36.)

On January 22, 2021, Plaintiff began exhibiting symptoms of nausea and vomiting and Dr. Wray placed him on a clear liquid diet and referred for a follow-up appointment. (*Id*. ¶ 38.) That appointment occurred on January 25, 2021, at which Dr. Wray diagnosed him with irritable bowel

syndrome (IBS) and prescribed prednisone—an anti-inflammatory and pain medication.  (*Id.* ¶ 39.)

On February 3, 2021, Plaintiff presented for a follow-up with abdominal pain with Dr. Wray who noted that his vital signs were stable, but that he had not been compliant with his prednisone prescription.  (*Id.* ¶ 40.)  That same day, Plaintiff was transferred to Pawnee Valley Community Hospital emergency room for abdominal pain and was then transferred to Great Bend Regional Hospital for surgical consultation for suspected appendicitis.  (*Id.* ¶ 42.)  The following day, Plaintiff was differentially diagnosed with having either a ruptured appendix or an appendicocele tumor, that would need to be confirmed with additional testing.  (*Id.* ¶ 43.)  In response, the surgeon at Great Bend Regional Hospital, Dr. Stiles, conducted a right hemicolectomy surgery on February 8, 2021.  (*Id.* ¶ 46.)  Surgery was performed during which the surgeon removed his ruptured appendix and a portion of his colon and small intestine.  (Docs. 80-6; 80-7.)  Following surgery, Plaintiff exhibited significant nausea and vomiting, and his incision later ruptured resulting in a second surgery to reclose the incision.  (Doc. 80-8.)  Even after the CT scan and surgery, the hospital staff had Plaintiff undergo an exploratory surgery to determine the source of Plaintiff's problem.  (Doc. 66 ¶ 46.)  Eventually, pathological results indicated that Plaintiff was positive for adenocardinoma—a type of cancer—of the colon.  (Docs. 80-8; 66-5 at 2.)  Plaintiff was eventually discharged on February 26, 2021.  (*Id.* ¶ 48.)  He was then housed briefly at Hutchinson Correctional Facility from February 26 through March 4, 2021, before returning to LCMHF until April 8, 2021, at which time he was eventually transferred to the Ellsworth Correctional Facility where he remains today.  (*Id.* ¶¶ 49-51.)

Following this significant medical intervention, on December 13, 2021, Plaintiff first filed a grievance with the prison, where Plaintiff makes the same allegations regarding his medical care

that are contained in his complaint—that is, deliberate indifference on the part of Dr. Harrod and

Dr. Wray. (Docs. 3 at 8; 66-7.) However, while the record is not entirely clear what happened to

that grievance—as it was not responded to until August 30, 2023—the *Martinez* Report indicates

that Plaintiff's grievance from December 2021 may have been lost. (Doc. 11 at 17.)

On November 13, 2023, the Secretary of Corrections reviewed Plaintiff's medical records

and issued a final decision in response to Plaintiff's December 2021 grievance. (*See* Doc. 66-5.)

In it, she provided a lengthy summary of the medical intervention Plaintiff had received over the

four years in question culminating in the multiple surgeries he received in February of 2021. (*Id.*)

The Secretary of Corrections determined that there was "no evidence of neglect or inadequate

practice" in Plaintiff's case, that Dr. Wray and Dr. Harrod were "clearly concerned about the

severity and duration of [Plaintiff's] case," and that while the nature of Plaintiff's surgery was

significant, it was a situation involving "atypical presentations of a somewhat atypical disease that

will slip by the most experienced clinician." (*Id.* at 2.) The Secretary of Corrections concluded

that "[i]n hindsight, there were a couple of points at which more aggressive investigation [by Dr.

Harrod and Dr. Wray] might have avoided these problems, but a contemporary evaluation would

not have triggered awareness of this problem." (*Id.*)

Plaintiff's complaint brings one count of deliberate indifference to his medical needs in

violation of the Eighth Amendment against Dr. Harrod and Dr. Wray. (Doc. 3.) Defendants move

for summary judgment on the basis that Plaintiff failed to administratively exhaust his claim, it is

barred by the applicable statute of limitations, and he fails to show that Defendants were

deliberately indifferent to his medical condition. (Doc. 66.) The court will address each of

Defendants' arguments in turn.

### III.    Analysis

#### A.  Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff's claim of deliberate indifference ought to be dismissed because he failed to exhaust his administrative remedies. (*Id*. at 10–12.) As an affirmative defense, Defendants have the burden of proof. *Moore v. Tresch*, 2022 WL 612796, at *2 (10th Cir. Mar. 2, 2022) (unpublished).

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). The Tenth Circuit has also held that the PLRA requires that "a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action." *Price v. Shinn*, 178 F. App'x 803, 805 (10th Cir. 2006); *see also Porter*, 534 U.S. at 523–25; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v.*

*Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).

As discussed in this court's prior order denying Defendants' motion to dismiss, there are two sets of regulations for grievances. (Doc. 33.) The regulation pertinent to the instant matter is codified by Article 15 of chapter 44 of the Kansas Administrative Regulations.

Under Article 15, Kansas state prisoners are to utilize the grievance process contained in that section for grievances related to policies and conditions within the facility, and actions by employees of the facility or other prisoners. K.A.R. § 44-15-101a(d). An inmate is required to use this process to exhaust a civil rights claim. *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017); *see also Lynn v. Kelly*, 2022 WL 1043752, at *1 (10th Cir. 2022) (unpublished).

Under Article 15, the administrative remedies require the inmate to first seek an informal resolution with prison personnel who work with the prisoner on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. *Id*. § 44–15– 101(d). The procedure to follow at each level is described in detail in K.A.R. § 44–15–102. Further, the regulations provide that an inmate must file the grievance "within 15 days from the date of the discovery of the event giving rise to the grievance" and that no grievance can be filed later than one year after the event. *Id*. § 44-15-101b.

Here, Defendants argue that Plaintiff failed to timely exhaust his administrative remedies as required by the PLRA. Kansas regulations require inmates to file grievances within 15 days

from the date of discovery of the event giving rise to the grievance. (Doc. 66 at 11 (citing K.A.R. § 44-15-101b).) Defendants contend that Plaintiff's claims accrued at the latest on February 26, 2021, when he was discharged from Great Bend Regional Hospital, which means he had until March 15, 2021, to file his grievance. (Doc. 66 at 12 (citing Doc. 66 ¶ 48).) Further, it is undisputed that Plaintiff did not attempt to file his grievance until December 13, 2021—almost ten months after the deadline. (Doc. 66 at 12 (citing Doc. 66 ¶ 53); *see also* Doc. 76 at 8 ("Plaintiff filed original grievance on December 13,2021.") Defendants therefore maintain that summary judgment is proper because Plaintiff failed to comply with the mandatory grievance procedures that must precede a claim brought under § 1983.

Plaintiff responds that the 15-day filing deadline was unavailable to him because he was not released from the hospital until after the deadline expired, and that the facility thwarted his efforts to follow the three-step grievance procedure based on not responding to his grievance years later. (Doc. 76 at 7-8.) Plaintiff further contends that his grievance was eventually located on the facility computer in August 2023 by Unit Team Hoss, resubmitted, and answered as untimely. (Doc. 76 at 8 (citing Doc. 76-21).) Most significantly, Plaintiff argues that even if his grievance was deemed untimely, prison officials decided it on the merits anyway, citing the November 21, 2023 "Unofficial Grievance Response" signed by the Secretary of Corrections. (Doc. 76 at 8-9 (citing Doc. 76-6 at 2).) Plaintiff maintains that when prison officials accept a belated filing and consider it on the merits, exhaustion is satisfied, citing *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004).

While Defendants are correct that Kansas regulations require grievances to be filed within 15 days from the date of discovery, K.A.R. § 44-15-101b, and that Plaintiff's December 13, 2021, filing would facially appear untimely if his claims reasonably accrued no later than February 2021,

11

the undisputed record demonstrates that prison officials ultimately addressed Plaintiff's grievance on the merits. On November 21, 2023, the Secretary of Corrections issued a response to Plaintiff's grievance appeal that included detailed clinical findings of fact addressing Plaintiff's medical treatment from November 2017 through February 2021. (Doc. 76-6.) The response included a comprehensive medical timeline, the Secretary of Corrections' conclusions, and ultimately stated "no further recommendations at this time." (*Id*. at 2.) Under *Ross*, "if a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." 365 F.3d at 1186 (overruled in part on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)). While the court is not clear why the grievance was responded to as untimely (Doc. 76-21), and a couple of months later was responded to on the merits (Doc. 76-6), the fact remains that prison officials conducted a substantive review of Plaintiff's medical care and issued findings in response to Plaintiff's grievance.

Moreover, Plaintiff has presented evidence suggesting interference with the grievance process that may have rendered administrative remedies effectively unavailable. Plaintiff alleges that after filing his grievance on December 13, 2021, he received confirmation on January 12, 2022, that his grievance had been sent to LCMHF for response. (Docs. 76 at 7-8; 76-13.) When Plaintiff attempted to proceed to the next step by requesting a copy of his grievance on January 14, 2022, staff responded they did not have it. (Docs. 76 at 8; 76-16.) The grievance was allegedly not located until August 2023. (Doc. 76 at 8.) While neither Kansas nor the Tenth Circuit has specifically addressed whether delayed responses to grievances constitute interference rendering administrative remedies unavailable, the Supreme Court has held that "interference with an inmate's pursuit of relief renders the administrative process unavailable," and when remedies are

unavailable, "[the PLRA] poses no bar" to proceeding in federal court. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Viewing the evidence in the light most favorable to Plaintiff, the court finds that Defendants have not met their burden of proving that Plaintiff failed to exhaust available administrative remedies. Accordingly, Defendants' motion for summary judgment on exhaustion grounds is denied.

### B. Statute of Limitations

Next, Defendants argue that Plaintiff's claim of deliberate indifference ought to be dismissed because he failed to comply with the applicable statute of limitations. (Doc. 66 at 10–12.) Again, as an affirmative defense, Defendants have the burden of proof. *Tresch*, 2022 WL 612796, at *2.

The statute of limitations is tolled while a prisoner is exhausting his administrative remedies. *See Johnson v. Garrison*, 805 F. App'x 589, 594 (10th Cir. 2020); *Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019) ("[E]very circuit that has confronted a state no-tolling rule and reached this question has applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period."). Accordingly, Plaintiff's claim was tolled until the Secretary of Corrections issued a response to Plaintiff's grievance appeal on November 21, 2023. (Doc. 76-6.) This would make his claim timely. Defendants' motion for summary judgment on statute of limitations grounds is denied.

### C. Deliberate Indifference

Plaintiff has failed to show that Defendants were deliberately indifferent in violation of the Eighth Amendment to the United States Constitution, therefore summary judgment is warranted.

The Eighth Amendment protects against deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976) ("[D]eliberate indifference to serious

medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."). Deliberate indifference to a serious medical need requires proof that, objectively, a plaintiff was suffering from a serious medical need and that, subjectively, a defendant was aware of the need for medical care but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)); *see also Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1155 (10th Cir. 2022) (holding that a plaintiff may satisfy the objective component based on a delay in medical care if the delay resulted in substantial harm).

Defendants argue that Plaintiff has failed to establish either the objective or subjective component of his deliberate indifference claim. For the objective component, Defendants contend that Plaintiff's medical issues were complex and not "obvious" such that they should have engaged in a different course of action, noting that even after Plaintiff was transferred to Great Bend Regional Hospital, medical staff had multiple theories of diagnoses and required exploratory surgery to determine the problem. (Doc. 66 at 16.) Defendants emphasize that the Secretary of Corrections found Plaintiff's situation was an "atypical presentations of a somewhat atypical

14

disease that will slip by the most experienced clinician." (*Id.* at 16-17.) Defendants argue this complex situation does not meet the standard for deliberate indifference under § 1983.

In response, Plaintiff argues that pain itself constituted a serious medical need, stating that his "untreated severe pain" is sufficient to satisfy the objective component and that conditions causing significant pain are serious medical needs that satisfy the objective component. (Doc. 76-2 at 5.) Plaintiff contends his numerous complaints of pain are chronicled in the complaint and corroborated by his affidavit, and argues that even if he received some care, that the care he received was "ineffective" to combat the pain he experienced. (Doc. 76 at 3.)

Defendants' argument misapprehends the objective prong of the deliberate indifference analysis. Defendants cite *Smith v. Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021), for the proposition that because other medical providers found Plaintiff's condition diagnostically complex to diagnose, it was not "obvious" and therefore not a "serious medical need." (Doc. 66 at 16-17.) However, *Smith* does not support this contention. Rather, the objective inquiry focuses on whether the "medical condition was sufficiently serious." *Smith*, 987 F.3d at 910.

The undisputed facts demonstrate that Plaintiff's condition meets the objective standard for a serious medical need. Plaintiff suffered from chronic abdominal pain for over three years, accompanied by anemia, inflammation of the large intestine, significant weight loss, fatigue, constipation, and eventually a ruptured appendix that required emergency surgery, resulting in acute infection filling his abdominal cavity, necessitated removal of portions of his colon and small intestine, and leading to a second emergency surgery. (Docs. 66 ¶¶ 4, 15, 42–47; 76-2 ¶¶ 23–28.) In response to these medical conditions suffered by Plaintiff, Defendants continually felt that they mandated treatment through testing, medications, or other interventions. (*Id.* ¶¶ 4 – 9, 16, 33–35.) The Tenth Circuit has consistently recognized that conditions involving severe pain, significant

weight loss, and symptoms requiring surgical intervention constitute serious medical needs.  *See*, *e.g.*, *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) (recognizing that "severe pain" can satisfy the "objective element of the deliberate indifference test."); *Sealock*, 218 F.3d at 1209 (holding a "medical need is sufficiently serious" if the condition is "mandating treatment"); *Burnham v. Villani*, No. 123CV01775CNSSTV, 2023 WL 6464914, at *3 (D. Colo. Oct. 4, 2023) ("[U]ncontrolled abdominal pain—[is] more than sufficient to establish the objective component of his Eighth Amendment claim.").

Because the court finds that Defendants are entitled to summary judgment due to the subjective prong analysis of Plaintiffs' deliberate indifference claim, the court need not extensively analyze the objective component.  However, for purposes of this analysis, the court is satisfied that Plaintiff provides sufficient evidence to show that he suffered a sufficiently serious medical condition to satisfy the objective prong.

"To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sawyers v. Norton,* 962 F.3d 1270, 1283 (10th Cir. 2020) (citation omitted).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 1304-05 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  The test requires that Defendants "possess an actual consciousness of a risk to prisoner health and safety." *Toevs v. Milyard*, 563 F. App'x 640, 645 (10th Cir. 2014).  Finally, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

For the subjective component, Defendants assert the undisputed evidence shows that over a three-year period, Dr. Harrod continually treated Plaintiff for his abdominal issues and ordered different tests to determine the cause of his discomfort, including medications, injections, a colonoscopy, and additional testing, along with prescribing medication.  (Doc. 66 at 15 (citing Doc. 66 ¶¶ 3-32).)  Defendants note that many of these tests came back negative or with normal results, and that there were several instances where Plaintiff informed Dr. Harrod that treatment options were making him feel better or providing at least some relief.  (*Id.* at 15-16 (citing Doc. 66 ¶¶ 7, 9, 18, 23-24, 26-27, 30).)  Moreover, Defendants argue that when Plaintiff did present with medical conditions deserving of attention—such as when Dr. Harrod diagnosed him with anemia—that Dr. Harrod always responded with a course of action that was deemed proper by later medical reviewers.  (*See* Doc. 66-5.)  Regarding Dr. Wray, Defendants argue that in the approximately one-month period he treated Plaintiff, he ordered tests and provided prescriptions, including an x-ray of Plaintiff's abdomen and medication after diagnosing Plaintiff with IBS. (Doc. 66 at 16 (citing Doc. 66 ¶¶ 35-40).)  Defendants maintain that both physicians engaged in continual treatment of Plaintiff in an attempt to resolve his issues such that they did not disregard an excessive risk to Plaintiff's health or safety.

In response, Plaintiff argues that Dr. Harrod's own affidavit contradicts his assertion that all tests came back negative, pointing to a June 2018 CT scan that revealed inflammation in Plaintiff's large intestine.  (Doc. 76 at 3-4 (citing Doc. 76-2 at ¶¶ 8, 16).)  Plaintiff contends that Dr. Harrod failed to properly treat this inflamed intestine because he provided no pain-relieving medication.  (*Id.* at 4.)  Regarding Dr. Wray, Plaintiff argues he should have recognized that

Plaintiff's complaints of pain in his lower right abdomen were symptomatic of appendicitis but failed to physically check Plaintiff's abdomen.  (*Id*. at 4-5.)[4]

The court finds that Plaintiff has failed to establish the subjective component of deliberate indifference.  First, Plaintiff's primary contention that he received no pain-relieving medication from Defendants is contradicted by the record.  Rather, it appears that Plaintiff mainly disagrees with the type and strength of pain medication prescribed to him.  (Doc. 76 at 2–3.)  The undisputed facts show that Dr. Harrod prescribed medications intended to address Plaintiff's symptoms and provide relief, including simethicone and docusate to prevent bloating and excessive gas production, iron supplements and B-12 injections to treat anemia and increase energy levels, and Carafate (an antacid) that was noted to be "effective in temporarily treating Plaintiff's symptoms." (Doc. 66 ¶¶ 5, 10, 20-21, 23, 29; Doc. 66-5 at 1.)  The fact that Plaintiff may have preferred different or additional pain medication does not establish deliberate indifference.  "[A] difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference."  *Todd v. Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012) (citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("[A] medical difference of opinion . . . is not actionable under the Eighth Amendment.")).  Where a prisoner is experiencing pain but has not been denied all pain medication, the choice of pain medication by the medical staff "simply does not demonstrate subjective deliberate indifference."  *Vreeland v. Fisher*, 682 F. App'x 642, 649 (10th Cir. 2017); *see also Carter v. Troutt*, 175 F. App'x 950 (10th Cir. 2006) (unpublished)

---

[4] Defendants do not dispute that Dr. Wray did not physically check Plaintiff's abdomen, but such an argument by Plaintiff is unpersuasive in arguing deliberate indifference as Defendants point to the undisputed record evidence that shows Dr. Wray ordered an x-ray of Plaintiff's abdomen on January 7, 2021, in order to assess Plaintiff's pain.  (Doc. 81 at 9 (citing Doc. 66 ¶ 35).)  While Plaintiff believes that Dr. Wray should have physically felt his abdomen, he is not in a position to make such decisions as they are matters of medical judgment.  *Estelle*, 429 U.S. at 107 ("[T]he Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what ... treatments should be administered to an inmate is a 'classic example of a matter for medical judgment' and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients.").

(finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (holding that prisoner who was given pain medication for his headaches, albeit not the medication he desired, did not state an Eighth Amendment violation); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, . . . [is] insufficient to establish a constitutional violation.").

Second, Plaintiff's argument that Dr. Harrod "persisted in a course of treatment and tests known to be ineffective" does not establish deliberate indifference but rather reflects a disagreement with the course of treatment chosen by his physicians.  (Doc. 76 at 3.)[5]  The record shows that Dr. Harrod ordered numerous diagnostic tests over a three-year period, including a colonoscopy, abdominal ultrasound, EGD, multiple CT scans, and an echocardiogram, and that he adjusted Plaintiff's treatment plan based on the results and Plaintiff's reported symptoms.  (Doc. 66 ¶¶ 6–28.)  On several occasions, Plaintiff even reported that certain treatments were helping him feel better.  (*Id.* ¶¶ 18, 24, 30.)  Plaintiff does not point to anything in the record demonstrating that Dr. Harrod possessed "actual consciousness" that his treatment approach posed a substantial risk of serious harm to Plaintiff; rather, Plaintiff seems only to disagree with Dr. Harrod's medical judgment that the testing and treatments prescribed were appropriate responses to Plaintiff's symptoms.  "A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment."

---

[5] Plaintiff also argues that Dr. Harrod "refused to refer [him] to an outside specialist."  (Doc. 76 at 3.)  Again, this is merely disagreement with Dr. Harrod's course of treatment and does not rise to the level of deliberate indifference. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist.").

*Estelle*, 429 U.S. at 106–07; *Waterman v. Harred*, No. 23-3182-JWL, 2024 WL 1051160, at *3 (D. Kan. Mar. 11, 2024) ("merely a disagreement with the course of treatment [] does not rise to the level of deliberate indifference"); *see also Arriaga v. Roberts*, 803 F. App'x 222, 223 (10th Cir. 2020) (unpublished) (prisoner's disagreement with medical judgment refusing to provide specific medication not enough to show deliberate indifference).[6]

Third, even viewing the evidence in the light most favorable to Plaintiff, the record demonstrates that both Dr. Harrod and Dr. Wray actively treated Plaintiff's complaints rather than disregarding them. Dr. Harrod saw Plaintiff repeatedly over three years, ordered extensive diagnostic testing, adjusted medications and treatment plans, and referred Plaintiff for specialized procedures including colonoscopy and EGD. (Doc. 66 ¶¶ 3-32.) Dr. Wray, during the approximately one-month period he treated Plaintiff, ordered diagnostic testing, prescribed medication including prednisone for his symptoms, diagnosed him with IBS, and referred him for a GI appointment. (*Id.* ¶¶ 35-40.) The fact that these treatments did not prevent Plaintiff's appendix from rupturing and having part of his colon removed due to cancer—which was later described as an "atypical presentation of a somewhat atypical disease"—does not, without more, establish that either physician was deliberately indifferent to Plaintiff's medical needs. (*See* Doc. 66-5 at 2.) "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d at 1233. Thus, a reasonable jury could not infer conscious disregard from either Defendant during the course of their treatment of Plaintiff.

---

[6] The clinical review conducted by the Kansas Department of Corrections Medical Health Authorities supports this conclusion, finding "no evidence of neglect or inadequate practice." (Doc. 66-5 at 2.) The fact that even hospital physicians at Great Bend Regional Hospital initially had difficulty diagnosing Plaintiff's condition and required multiple procedures to determine the extent of his medical issues undermines Plaintiff's contention that his appendicitis was so obvious that Defendants' failure to diagnose it earlier constituted deliberate indifference. (Doc. 66 ¶¶ 42-47.)

And "[s]ummary judgment requires more than mere speculation." *Id*. at 1235. In the end, Plaintiff cannot argue he was consciously denied necessary medical treatment. He was not.

In sum, there is no evidence that Defendants subjectively disregarded Plaintiff's abdominal and gastrointestinal medical conditions. The undisputed facts show Defendants have effectively managed Plaintiff's medical conditions and fall far short of the deliberate indifference standard. Plaintiff fails to show that Defendants were aware of and disregarded Plaintiff's medical needs. Plaintiff has failed to show the subjective prong of deliberate indifference. For these reasons, Defendants are entitled to summary judgment.

## IV. Conclusion

THEREFORE, Defendants' motion for summary judgment (Doc. 65) is GRANTED.

IT IS SO ORDERED. Dated this 21st day of November 2025.

__s/ John Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE